IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BOBBY L. PHILLIPS, #A-66488,      )
                                        )
          Plaintiff,       )
                                          )
vs.                              )     Case No. 11-cv-1003-MJR
                                          )
S.A. GODINEZ, SHERRY BENTON,    )
DAVE REDNOUR and MRS. OAKLEY,   )
                                          )
          Defendants.     )

<u>MEMORANDUM AND ORDER</u>

REAGAN, District Judge:

          Plaintiff Bobby L. Phillips, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff is serving a 25-year sentence for burglary. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

          An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*.  At the same time, however, the factual allegations of a pro se complaint are to be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and supporting exhibits in light of § 1915A, the Court finds that this matter should receive further review.

## The Complaint

Plaintiff alleges that he has been threatened by other inmates and that several gangs (the Aryan Brotherhood, North Siders and Latin Kings) have put a contract on him to have him killed.  Members of these gangs are known by Plaintiff to be housed in Menard Correctional Center.  One of Plaintiff's enemies, nicknamed "Shaky (or Shady) John," is assigned as an inmate gallery worker in the cell house where Plaintiff resides.  Plaintiff states that he has also received threats from inmates Larry Rodgers, Roderick Choisser and an inmate known as "Snake" (Doc. 1, p. 2).  Plaintiff is age 52 and in poor health.

Beginning in June or July 2011, Plaintiff informed each Defendant of these specific threats and requested to be placed in protective custody because of the danger to his life and safety.  However, Defendants, knowing of the specific threats and individual enemies identified by Plaintiff,

denied Plaintiff's protective custody request.

It appears from the complaint that Plaintiff was temporarily in protective custody, because he alleges that he was informed on October 24, 2011, that he would be "returned" to general population.  Plaintiff had directed protective custody requests to Defendant Godinez (Director of the Illinois Department of Corrections "IDOC") on June 27, 2011, and October 12, 2011, but these requests were denied.  He alleges that Defendant Benton (of the IDOC Administrative Review Board) denied him protective custody on October 12, 2011, after refusing to investigate his allegations of specific threats.  Plaintiff wrote three letters asking for protective custody, in August and September 2011, to Defendant Rednour (the Menard Warden) and sent him two emergency grievances, but received no response.

Finally, Plaintiff presented his protective custody request on October 13, 2011, to Defendant Oakley of Menard Correctional Center Internal Affairs.  She denied the request, despite the fact that a sergeant verified Plaintiff's allegations that "Shaky John" was a cell house worker in the East Cell House, where Plaintiff is assigned to live.  Plaintiff states that this sergeant was able to provide Defendant Oakley with "Shaky John's" real name and inmate number.

Plaintiff requests an injunction ordering Defendants to place him in protective custody housing.

**Discussion**

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners."  *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the corrections

officers responsible for the prisoner's safety. *Farmer,* 511 U.S. at 834.  In order for a plaintiff to succeed on a failure to protect claim, he must show that he was incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.; Pinkston*, 440 F.3d at 889.  A plaintiff also must prove that prison officials were aware of a specific, impending and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir. 1996).

A defendant in a failure to protect claim cannot "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer*, 511 U.S. at 843 (a substantial risk of harm to a prisoner may exist where he "faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk"); *see also Hill v. Godinez,* 955 F. Supp. 945, 949 (N.D. Ill. 1997) (summary judgment denied for defendant who refused plaintiff's request for protective custody where plaintiff "apparently did everything except identify by name" the inmates who were threatening him, and plaintiff was then attacked by gang members).  Under this authority, a plaintiff's inability to identify by name each inmate who threatened him does not make the threat insufficiently specific or credible.

When a plaintiff has actually been attacked by another inmate, if he is to succeed on a failure to protect claim, he must show that the defendants knew there was a substantial risk that those who attacked plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry,* 266 F.3d 724, 733-34 (7th Cir. 2001).  However, conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, 440 F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168,

172 (7th Cir. 1985)).

> A prisoner's interest in safety does not lead to absolute liability, however, any more than the state is the insurer of medical care for prisoners.... [T]he eighth amendment has a mental component. The eighth amendment addresses only punishment. Whether an injury inflicted by fellow prisoners ... is "punishment" depends on the mental state of those who cause or fail to prevent it.... Other mental states, including total indifference to risks, come so close to deliberateness that courts treat them alike. Thus judges speak ... of "deliberate indifference" or "recklessness" as the functional equivalent of intent. Although there are shadings of meaning here, total unconcern for a prisoner's welfare – coupled with serious risks – is the functional equivalent of wanting harm to come to the prisoner.

*McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991).

In Plaintiff's case, he has not yet been attacked or suffered physical injury. However, he has been informed that he is under a death threat from several active prison gangs who have put out a contract on him. Moreover, he has identified several individuals who have allegedly threatened him, one of whom would have regular access to Plaintiff by virtue of his status as an inmate gallery worker in Plaintiff's housing unit. If Plaintiff were bringing a claim for failure to protect *after* having been the victim of an attack following the specific threats he has described herein and reported to prison officials, he would have pleaded sufficient facts for his deliberate indifference claim to proceed beyond preliminary review. Plaintiff is, in effect, seeking to mitigate his potential damages from a threatened attack by requesting prospective injunctive relief in the form of protective custody status based on ongoing specific threats. Plaintiff has repeatedly complained to Defendants about the threats to his safety, yet his requests for protective custody have been denied.

The Supreme Court in *Farmer* indicated that injunctive relief would be an appropriate remedy for a prisoner under a credible threat of attack by another inmate. *Farmer v. Brennan*, 511 U.S. at 850-51 (district court on remand should address whether injunction would be appropriate based on evidence to be adduced regarding the likelihood of transsexual inmate's

transfer to a setting where he could face greater threat). Prior to *Farmer*, courts recognized that a prisoner need not wait until he is actually assaulted before he may obtain relief. *Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980); *Woodhouse v. Com. of Va.*, 487 F.2d 889, 890 (4th Cir. 1973); *see also Benefield v. McDowall*, 241 F.3d 1267 (10th Cir. 2001).

"Before a court may award permanent injunctive relief, a party must demonstrate (1) it has succeeded on the merits; (2) no adequate remedy at law exists; (3) the moving party will suffer irreparable harm without injunctive relief; (4) the irreparable harm suffered without injunctive relief outweighs the irreparable harm the nonprevailing party will suffer if the injunction is granted; and (5) the injunction will not harm the public interest." *Old Republic Ins. Co. v. Employers Reinsurance Corp.,* 144 F.3d 1077, 1081 (7th Cir. 1998), *citing Amoco Prod. Co. v. Vill. of Gambell,* 480 U.S. 531, 546 n. 12 (1987) (additional citations omitted).

At this stage of the litigation, the Court is unable to accurately determine whether Plaintiff will be able to succeed on the merits or be able to meet the other criteria he must show to obtain the permanent injunction he seeks. Therefore, it would be inappropriate to dismiss his complaint at this stage, and his claims shall receive further review.

**Pending Motions**

Plaintiff has filed a motion for leave to proceed *in forma pauperis* (IFP) in this case (Doc. 2), seeking leave to proceed without prepayment of the Court's ordinary filing fee of $350.00 in civil cases. *See* 28 U.S.C. § 1914(a). Pursuant to 28 U.S.C. § 1915, an indigent prisoner may be permitted to bring a suit without prepayment of this fee upon presentation of an affidavit of indigence, accompanied by "a certified copy of the trust fund account statement ... for the prisoner for the 6-month period immediately preceding the filing of the complaint..., obtained from the

appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(1)-(2). The Court will then assess an initial partial filing fee of twenty percent of the greater of: (1) the average monthly deposits to the prisoner's trust fund account; or (2) the average monthly balance in the prisoner's trust fund account for the six-month period immediately preceding the filing of the prisoner's suit. *See* 28 U.S.C. § 1915(b)(1)(A)-(B). After payment of the initial partial filing fee, a prisoner is required to make monthly payments of twenty percent of the preceding month's income credited to the prisoner's trust fund account, each time the account balance exceeds $10.00, until the filing fee is paid. *See* 28 U.S.C. § 1915(b)(2). The obligation to pay the filing fee is incurred when the lawsuit is filed, and this obligation continues regardless of later developments in the case, such as dismissal of the suit. *See* 28 U.S.C. § 1915(b)(1), (e)(2); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Plaintiff has tendered to the Court an affidavit regarding his indigence, together with a certified copy of his prison trust fund account statement for a portion of the six-month period preceding the filing of this lawsuit. The Clerk of Court has requested, but has not yet received, Plaintiff's trust fund account statements for the remainder of those six months. Petitioner states in his affidavit that his total earnings from his prison job over the past year have been less than $40.00. The prison has advanced him funds for legal postage, and his November 17, 2011, trust fund account statement shows a negative balance of ($-1.70). Thus, the Court concludes that Plaintiff is unable to pay in full the $350.00 filing fee at this time and finds it appropriate to permit him to proceed IFP in this case.

Therefore, pursuant to 28 U.S.C. § 1915, Plaintiff's motion for leave to proceed IFP in this case (Doc. 2) is **GRANTED**. At such time as the Trust Fund Officers at Menard and

Stateville deliver to the Court certified copies of Plaintiff's prison trust fund account statements for the six-month period immediately preceding the filing of this case, the Court will enter an appropriate order with respect to the initial partial filing fee and subsequent monthly payments that Plaintiff must make under § 1915 as described above.

**Disposition**

      **IT IS ORDERED** that the Clerk of Court shall prepare for Defendants **GODINEZ, BENTON, REDNOUR** and **OAKLEY** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

      **IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

      **IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon

defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Williams for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

IT IS SO ORDERED.

DATED this 28 day of November, 2011

s/ MICHAEL J. REAGAN

MICHAEL J. REAGAN
United States District Judge